EASTERN RAILROAD COMPANY *vs.* WILLIAM C. ROGERS & others.

Suffolk. March 25. — June 28, 1878. ENDICOTT & LORD, JJ., did not sit.

The Portsmouth, Great Falls and Conway Railroad Company executed a lease of its road to the Eastern Railroad in New Hampshire, by the terms of which the lessor was to complete its road, then only partially constructed, at its own expense, and give the entire control of it, when completed, to the lessee; the lessee was to pay, as rent, out of the net earnings of the roads, dividends to the lessor's stockholders equal to those paid by the lessee to its own stockholders; and the lessee, out of the gross income of the roads, was to pay certain expenses " and the interest that may accrue on any past or future loans." This lease was adopted and confirmed by the Eastern Railroad Company of Massachusetts, which also had a lease of the property of the Eastern Railroad in New Hampshire. The Portsmouth, Great Falls and Conway Railroad Company borrowed money of the Eastern Railroad Company, with which to complete its road, and repaid a portion of such money by issuing its bonds to the Eastern Railroad Company of Massachusetts, which the latter guaranteed, and then sold and pledged. *Held,* that the Eastern Railroad Company of Massachusetts did not take the earnings of the Portsmouth, Great Falls and Conway Railroad Company charged with a trust to pay the interest on such bonds; and that it was not authorized to pay such interest as " rentals " or " operating expenses " under the St. of 1876, c. 236, § 13.

BILL IN EQUITY by the Eastern Railroad Company, a corporation established in this Commonwealth, against the trustees of the same, appointed under the St. of 1876, c. 236, the holders of certificates of indebtedness issued under the trust deed to them, the Eastern Railroad in New Hampshire, the Portsmouth, Great Falls and Conway Railroad Company, both corporations established in the State of New Hampshire, and the holders, either as purchasers or as collateral security, of bonds of the Portsmouth, Great Falls and Conway Railroad Company, to obtain the instructions of the court. Hearing before *Soule, J.,* who reserved the case for the consideration of the full court. The facts appear in the opinion.

*R. Olney*, for the plaintiff.

*D. Foster*, for the trustees and the holders of certificates of indebtedness.

*E. D. Sohier & C. A. Welch*, for the Portsmouth, Great Falls and Conway Railroad Company.

*S. Bartlett, E. R. Hoar, G. O. Shattuck & J. B. Warner*, for certain bondholders.

MORTON, J.   The question presented by this bill is whether it is the duty of the Eastern Railroad Company to apply the earnings of its railroad to the payment of the interest on the bonds of the Portsmouth, Great Falls and Conway Railroad Company, as it shall, from time to time, accrue and become due.   To answer this question, it is necessary to examine carefully the origin of these bonds and of the liability of the Eastern Railroad Company upon them.

By articles of agreement, dated February 18, 1840, the Eastern Railroad in New Hampshire leased to the Eastern Railroad Company its railroad in New Hampshire and all its appurtenances for the term of ninety-nine years.   It is not necessary to state in detail in this connection the provisions of this lease, though we may hereafter refer to some of them incidentally.   On December 26, 1862, the two companies entered into a supplemental agreement which in some respects changed the provisions of the original lease. · The third article of the supplemental agreement provided that " said Eastern Railroad Company shall prepare, from time to time, a dividend-sheet containing a list of the stockholders of said Eastern Railroad in New Hampshire, from a list to be furnished it by the Eastern Railroad in New Hampshire, and shall pay to the treasurer of the Eastern Railroad in New Hampshire, for the use of, and to be by him paid over to, each and every holder of stock in said Eastern Railroad in New Hampshire, the .same dividend per share that it pays to holders of stock in said Eastern Railroad Company, and at the same time, so that the stockholders in both corporations shall always and under all circumstances fare alike and equally, share for share ; and such payments shall be in lieu of and in full for all rent and claim for rent which said Eastern Railroad in New Hampshire can have upon said Eastern Railroad Company by virtue of said contract of lease bearing date February 18, 1840,

as well when said Eastern Railroad Company does not, as when it does, make a dividend to its own stockholders."

It appears to have been the purpose of both parties to these agreements to unite and consolidate the two corporations so far as was consistent with the necessity, under which each was, of maintaining its corporate existence in the state by which it was chartered, and to put the stockholders of both upon the same equality as if they were stockholders in a single corporation.

Such were the relations between the two corporations when, on September 12, 1870, the Portsmouth, Great Falls and Conway Railroad Company executed the lease to the Eastern Railroad in New Hampshire, upon the construction and effect of which the rights of the parties in this suit mainly depend. The lease ran to the Eastern Railroad in New Hampshire, because the Portsmouth, Great Falls and Conway Railroad Company had by its charter a right to lease or sell its railroad, franchise and property to any railroad corporation in the State of New Hampshire, and had not authority to lease or sell it to a foreign corporation. But the Eastern Railroad Company, by an indorsement on the lease made three days after its date, but which was clearly part of the same transaction, adopted, ratified and confirmed the doings of the Eastern Railroad in New Hampshire, and substantially assumed all its duties and liabilities under the lease. For all the purposes of this case, therefore, the Eastern Railroad Company is to be treated as though it had been the party directly contracting with the Portsmouth, Great Falls and Conway Railroad Company.

At the time the said lease was made, the railroad of the Portsmouth, Great Falls and Conway Railroad Company had been built only in part. The first article leases to the Eastern Railroad in New Hampshire "the said Portsmouth, Great Falls and Conway Railroad, as now located, and as the same or any part or parts thereof may hereafter be located, and every part thereof," together with all side tracks, turn-tables and other conveniences or appurtenances, and all the real estate, depots, buildings and structures that may be acquired or built for the use and accommodation of the same, "and the right and authority to make and complete the same, and to construct and finish any and all buildings and other accommodations in and upon and about the

premises, which the said party hereto of the second part, its representatives or agents, may deem needful, at the cost and expense of the party hereto of the first part;" to have and to hold the premises for the term of sixty-nine years from the twelfth day of September, 1870.

The article then proceeds to make provision for the payment of rent by the lessee, and it contains in separate clauses two modes of ascertaining the amount of rent to be paid which appear to be inconsistent. It first adopts the mode provided in the original lease from the Eastern Railroad in New Hampshire to the Eastern Railroad Company; and then, in a separate paragraph immediately following, adopts the mode provided in the supplemental agreement of December 26, 1862, which was intended as a substitute for the former, and which we have above quoted in full. But this apparent confusion is not material in this case. Whichever mode of determining the amount of the rent may be adopted as being within the final intention of the parties, it is plain that no rent was to be paid except when the Eastern Railroad in New Hampshire should pay dividends to its own stockholders. The stockholders of the Portsmouth, Great Falls and Conway Railroad Company were to receive as rent, or in lieu of rent, dividends *pari passu* with the stockholders of the Eastern Railroad in New Hampshire.

By the second article of the agreement of lease, the Portsmouth, Great Falls and Conway Railroad Company covenants that it will "without unnecessary delay, at its own cost and expense, and to the satisfaction of a majority of the directors of said Eastern Railroad in New Hampshire, construct and complete a railroad the entire length of the route to that part of Conway called North Conway, as described in the acts incorporating the party hereto of the first part, or as much thereof as requested by said Eastern Railroad in New Hampshire, and will purchase, build, construct and complete all such lateral tracks, turnouts, switches, turn-tables, depots, buildings and fixtures as the party hereto of the second part, or a majority of its directors, shall require; all which the said party hereto of the second part, its representatives and assigns, shall have, hold and enjoy, as part of the demised premises, during the term aforesaid."

The fourth article, which is the material article in this case, is as follows : " Fourth. From and out of the gross amount of the tolls and income of the railroads owned by the said parties hereto respectively, shall be deducted and paid, from time to time, all charges and expenses that may be incurred by said party hereto of the second part in rebuilding, maintaining and keeping in good condition said railroads, and the buildings, bridges, and other structures and property that may be held or used in connection therewith, and their appurtenances. Also all taxes which shall be assessed on the same or on any part thereof during said term. Also the rents of such real estate as may be hired by said party of the second part in conducting the business of said roads, and the tolls, charges and maintenance of any ferry or ferries. Also the cost and expense of renewing, replacing and keeping in repair any and all moving power, engines and cars that may be used on the said railroads respectively. Also the cost and expense of purchasing and procuring fuel. Also the salaries, wages and compensation of all superintendents, engineers, agents, clerks, assistants and servants who may be employed by the party of the second part upon said railroads or either of them, or any part thereof, or in any business connected therewith or relating thereto ; and all just claims for damages that may be sustained by any person or persons travelling in the cars on either of said railroads, and for the loss, destruction or damage of any property that may be carried in said cars, and all and singular costs, expenses and damages which said party hereto of the second part may be liable for as common carriers ; and generally, all charges that may be incurred in the management of the business or concerns of the said railroads, or any part thereof, and all incidental charges and expenses, and the interest that may accrue on any past or future loans."

The other provisions of the agreement of lease are not very material in this case.

In order to construe fairly the contracts of the parties, we must put ourselves, as nearly as may be, in their position at the time the agreements were made, judging of their intentions in the light of the circumstances surrounding them, and not in view of the disasters which afterwards befell the principal contracting party and which were probably not anticipated. The scheme of

the three railroad corporations seems to have been to form a single or consolidated line of railroad, so far as they could do so without violating the laws of the states in which they were respectively incorporated. The Portsmouth, Great Falls and Conway Railroad Company was to complete its road and appurtenances out of its capital stock or otherwise, at its own cost and expense. After it was completed, the Eastern Railroad Company was to manage the three roads, and to pay, out of the net earnings of the consolidated line, dividends to the stockholders of the several roads *pari passu*, and these dividends were to be in lieu of and in full for the rent of the leased roads.

After the agreements were made, it was found that the Portsmouth, Great Falls and Conway Railroad Company was not able to perform its contract and to construct and complete its railroad from its capital stock or other resources. To enable it to do so, it borrowed of the Eastern Railroad Company a large sum of money. A part of the sum so borrowed was repaid by issues of stock. The balance, amounting to $1,000,000, was repaid by issuing to the Eastern Railroad Company bonds of the Portsmouth, Great Falls and Conway Railroad Company, payable in 1892, with interest at the rate of seven per cent. payable semi-annually. The Eastern Railroad Company has negotiated and sold a part of these bonds and has pledged others of them, guaranteeing their payment. The holders of the bonds now claim that they are entitled to have the interest on them, as it accrues, paid out of the earnings of the road in priority of the other creditors. They base their claim upon two grounds. The first is, that by the fourth article of the agreement of lease, which we have quoted above, the Eastern Railroad Company must be held to take the earnings of the Portsmouth, Great Falls and Conway Railroad, charged with a trust to pay the interest on these bonds. The other is, that the interest on these bonds is to be regarded as in the nature of "rentals," or "operating expenses," which the Eastern Railroad Company is authorized to pay under the St. of 1876, *c.* 236, § 13.

Their argument is that the last clause of the fourth article is equivalent to a covenant on the part of the Eastern Railroad Company that, out of the gross earnings of the road, it will pay "the interest that may accrue on any past or future loans" made

to the Portsmouth, Great Falls and Conway Railroad Company. It is clear that both claims depend upon the assumption that this is the correct construction of the fourth article; for, if the only liability of the Eastern Railroad Company upon the bonds arises from its contract of guaranty made when it negotiated the bonds, and not from any covenants or stipulations in the agreement of lease, it will not be contended that either of the claims can be maintained.

We cannot concur in this view of the purpose or effect of the article. As we have before said, it was contemplated, as a part of the arrangement between the parties, that the Eastern Railroad Company should, as rent, or in lieu of rent, of the leased roads, pay to their stockholders, *pari passu* with its own stockholders, dividends out of the net earnings of the three roads. It was natural, and almost necessary, in order to avoid future misunderstanding and litigation, that the contracts should contain provisions as to the mode of determining what should be deemed to be net earnings. We think this was the purpose of the fourth article, and that it was intended for the direction and protection of the Eastern Railroad Company, and not to enlarge its liabilities. It contains no words of covenant or promise on the part of the Eastern Railroad Company. It provides merely that, " from and out of the gross amount of the tolls and income of the railroads owned by the said parties hereto respectively, shall be deducted and paid, from time to time," the charges, expenses and payments enumerated, including " the interest that may accrue on any past or future loans." By this was meant the interest which the Eastern Railroad Company might pay upon its loans. To hold that it was intended as a covenant that it would pay the interest on any money which the lessor might borrow would be inconsistent with the previous stipulations of the contract, by which the lessor agreed to complete the road at its own cost and expense, and by which the only rent to be paid by the lessee was in the form of dividends. No language is used in this article, which purports to create any new liability of the Eastern Railroad Company. It enumerates various charges and expenses which the company may incur in the management of the roads, but its liability to pay these charges and expenses is not created by this article, but arises out of other independent contracts or duties.

Our view of the true construction of this article is strengthened by referring to the previous contracts of the parties. It is entirely clear that this article was copied from the original lease of the Eastern Railroad in New Hampshire. In that lease, it is expressly declared that "the rent hereby reserved shall be paid from the net income of the railroads of the parties hereto, to be ascertained in the manner expressed in the fourth article hereof," thus showing clearly the purpose of the article; and the article itself clearly shows that the interest which was to be deducted from the gross earnings was interest which might be paid by the Eastern Railroad Company on its loans, the language being, "and all incidental charges and expenses, and the interest that may accrue on any past or future loans made by said Commonwealth, or otherwise, to said party of the second part."

For these reasons, we are of opinion that the fourth article does not create any liability upon the Eastern Railroad Company, or any charge upon the gross earnings of the roads leased, to pay the interest upon the bonds issued by the Portsmouth, Great Falls and Conway Railroad Company. The latter company is primarily liable to pay the bonds and the interest as it accrues. The only liability of the Eastern Railroad Company is a contingent and collateral liability arising from its contract of guaranty. It follows that it is not the duty or the right of the Eastern Railroad Company to apply the earnings of its railroad to the payment of the interest on the bonds of the Portsmouth, Great Falls & Conway Railroad Company, as it shall from time to time accrue and become due.                    *Decree accordingly.*